USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2|23|09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED NATIONAL INSURANCE COMPANY, :

                Plaintiff,    :        **OPINION**

       - against -        :       06 Civ. 3999 (DC)

GRANOFF, WALKER & FORLENZA, P.C.  :
<u>et al.</u>,

                    :

                Defendants.

                    :
- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**       RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
                    By:  Lance J. Kalik, Esq.
              Attorneys for Plaintiff
              Headquarters Plaza
              One Speedwell Avenue
              Morristown, New Jersey  07962

              KATSKY KORINS LLP
                    By:  David L. Katsky, Esq.
                        Thomas M. Lopez, Esq.
               Attorneys for Defendants Granoff, Walker &
                  Forlenza, P.C., Gary C. Granoff, Ellen
                  M. Walker, and Lee A. Forlenza
              605 Third Avenue
              New York, New York  10158

              SPEYER & PERLBERG, LLP
                    By:  Dennis M. Perlberg, Esq.
                      Jacqueline A. Rappel, Esq.
               Attorneys for Defendants Ulla Lee,
                  Individually and as the Administratix of
                  the Estate of Mike Lee, Degree Security
                  Systems, Inc., and 58 North 6th Street
                  Development Corp.
              115 Broadhollow Road, Suite 250
              Melville, New York  11747

**CHIN, District Judge**

        In this diversity case, plaintiff United National
Insurance Company ("UNIC") seeks a declaratory judgment that it
does not owe any duty to defend or indemnify its insured,
defendant Granoff, Walker & Forlenza, P.C. ("GWF"), for claims

brought against GWF in an underlying legal malpractice action.
The malpractice action was brought against GWF by its former
clients, Degree Security Systems, Inc. and its principal, Mike
Lee,[1] in New York Supreme Court, Kings County.

Before the Court are the parties' motions for summary
judgment.  For the reasons set forth below, defendants' motions
are granted and UNIC's motion is denied.  Judgment will be
entered in favor of defendants.

**BACKGROUND**

**A.   The Facts**

As the Court is granting summary judgment to GWF and
Degree, the facts are construed in the light most favorable to
UNIC.

**1.   Degree's Relationship with GWF**

GWF represented Lee, his wife, and their various real
estate entities from approximately 1988 until April 2005.
(Forlenza Decl. ¶ 2).  During that time, GWF handled more than
thirty matters for Lee.  (Id.).  The transactions included
purchases, sales, financings, and refinancings, and the Lees and
their entities owned and managed more than twenty separate real
estate investments.  (Id. ¶¶ 2, 6).  Lee was a knowledgeable and
experienced real estate developer who often negotiated his own
deals and often arranged for financing on his own.  (Id. ¶ 3).

---

[1]     Lee is deceased.  Degree, Lee's wife Ulla Lee
(individually and as the administratix of the estate of Mike
Lee), and 58 North 6th Street Development Corp. are named as
defendants herein as well.  They are referred to collectively as
"Degree."  References to "Lee" are to Mike Lee.

###   2.   **The FAB Transaction**

In 1999, FAB Land Corp. ("FAB") granted Degree a right
of first refusal with respect to the purchase of the property
located at 65, 67, 69, 76, 78-80 North 6th Street, Brooklyn, New
York (the "Property").  (Kalik Decl. Ex. B).  In 2001, FAB
entered into a contract to sell the Property to a third party for
$1,150,000.  (Forlenza Decl. ¶ 4).  Obligated by the right of
first refusal, FAB offered Degree the right to purchase the
Property on the same terms and conditions agreed to by the third
party.  (Id.).  Degree accepted the offer and retained GWF as its
transactional attorneys to complete the deal.  (Id. ¶ 5).

FAB subsequently received another offer to purchase the
Property for $1,400,000 and refused to sell to Degree unless
Degree matched the higher price.  (Id.; Kalik Decl. Ex. E).
Degree rejected FAB's attempt to change the purchase price and
directed GWF to commence an action in Supreme Court, Kings County
for specific performance ordering FAB to sell the Property to
Degree at the previously accepted price.  (Forlenza Decl. ¶ 6).
In May 2002, the Supreme Court granted Degree specific
performance.  (Kalik Decl. Ex. H).  In February 2003, the
Appellate Division, Second Department, affirmed the lower court's
ruling.  (Id. Ex. K).

On May 20, 2003, Degree and FAB entered into a contract
(the "contract") for the Property for a purchase price of
$1,125,000.  (Id. Ex. L).  The contract contained the following
mortgage contingency clause:

-3-

> This contract is subject to and conditioned
> upon PURCHASER obtaining a firm mortgage
> commitment for a conventional mortgage of
> $1,010,000.00 for a term or [sic] not less
> than ten (10) years, and bearing interest at
> the rate prevailing at time of CLOSING, such
> firm mortgage commitment to be obtained
> within thirty (30) days from the date of this
> contract.  Purchaser agrees to make proper,
> diligent and truthful application for such
> loan, and to execute all necessary papers and
> instruments in connection herewith.  In the
> event such mortgage cannot be obtained in
> that time, then either party may cancel this
> contract and the down payment shall be
> returned.  Upon the mailing of such payment,
> this contract, for all purposes, shall be
> considered cancelled and of no further force
> and effect, and the parties shall have no
> further or other claim against the other.
> SELLER shall have the right to extend the
> time for securing the mortgage commitment for
> an additional thirty (30) days.

(Id. at 9-10).  The contract also contained a provision requiring
all changes to be in writing.  (Id. at 8).

Lee Forlenza, a GWF partner, reviewed the provisions of
the contract, including the mortgage contingency clause, with
Lee.  (Forlenza Decl. ¶¶ 9-10).  In fact, the mortgage
contingency clause had been modified to reduce Degree's time to
obtain a mortgage commitment from forty to thirty days after
contract execution; Forlenza reviewed this with Lee.  (Id.).[2]

---

[2]    UNIC contends that GWF overlooked the clause or knew
about the clause but failed to advise Degree of the consequences
of not complying.  (Pl. Mem. at 23-25).  UNIC, however, cites
only two purported pieces of evidence to support this otherwise
conclusory assertion.  First, UNIC cites Forlenza's deposition
testimony that he did not specifically recall whether he spoke to
Lee about the clause, but asserted "there would not have been any
need to."  (Kalik Decl. Ex. J at 546).  Second, UNIC cites an
internal GWF email discussing a draft of an affirmation to be
signed by Forlenza that had been prepared by Degree's outside
counsel Steve Chernis for the FAB litigation.  (Id. Ex. P).  The

## 3.  **The Contract Is Cancelled**

Degree did not satisfy the mortgage contingency clause. Instead, Lee decided on his own to disregard the clause and finance the purchase with cash.  (Id. ¶¶ 11-12).  He did not, however, inform GWF of his plan to go "all cash" until a week or two before the scheduled date of the closing (June 23, 2003), when Forlenza called Lee to confirm that he had obtained the mortgage commitment.  (Id. ¶ 12).  At that point, Lee told Forlenza that he had negotiated an all cash deal directly with FAB's principals and that they had agreed to accept all cash. (Id.; Karlik Decl., Ex. J, Forlenza Dep. 246-48).  Lee told Forlenza that he had decided not to get a mortgage because he was going to use proceeds from the refinancing of another property to pay FAB.  (Forlenza Decl. ¶ 12).  After speaking with his client regarding the mortgage clause, Forlenza called FAB's counsel, Avrom Vann, to inform him that their respective clients had agreed that Degree "could go all cash at the Closing."  (Id. ¶ 16).  Forlenza testified that Vann told him "he would get back to him."  (Id.; Karlik Decl., Ex. J, Forlenza Dep. 246-48).

Vann did not respond to Forlenza, however, until the closing date of June 23, 2003, when the mortgage contingency

---

email states that a GWF lawyer had "concerns about you [Forlenza] stating that we [GWF] inadvertently overlooked the mortgage contingency clause."  (Id. Ex. P; Lopez Decl. Ex. 31).  As discussed below, neither of these purported pieces of evidence is sufficient to raise a genuine issue of fact as to whether Forlenza reviewed the contract and the mortgage contingency clause with Lee.

clause expired.  On that date, FAB cancelled the contract because
Degree failed to produce the required mortgage commitment within
the specified time period.  (Forlenza Decl. ¶ 16; Kalik Decl. Ex.
M).  Forlenza protested the cancellation, referencing the
parties' agreement to go "all-cash," thereby waiving the mortgage
contingency clause.  (Forlenza Decl. ¶ 17).  Vann responded by
demanding evidence that Degree had the necessary cash to purchase
the property.  (Id.).  Degree, however, could not produce such
evidence, as Lee had not arranged for the refinancing of his
other property.  (Id.).

        On June 30, 2003, Degree commenced an action in Supreme
Court, Kings County for specific performance, retaining GWF to do
so.  (Kalik Decl. Ex. O).  On December 5, 2003, the court
(Clemente, J.) found that the contract was effectively cancelled
by FAB in accordance with the mortgage contingency clause.
(Lopez Decl. Ex. 17).  The court discharged all notices of
pendency encumbering the premises.  (Id.).  On December 17, 2003,
Degree appealed, again asking GWF to represent it.  (Forlenza
Decl. ¶ 19; Kalik Decl. Ex. U).[3]  By order dated April 11, 2005,
the Appellate Division, Second Department, affirmed the lower
court's ruling.  (Kalik Decl. Ex. BB).

_____

        [3]    Steven Chernis, a litigator not affiliated with GWF,
was retained to assist in the appeal.  Chernis testified that in
December 2003, after Justice Clemente ruled, he and GWF discussed
"the potential of a malpractice action."  (Kalik Decl. Ex. T at
56-57).  Although Chernis did answer "yes" when asked if any GWF
attorney stated that "if Degree did not win the appeal, they
expected a malpractice suit to be filed", his overall testimony
is much more equivocal.  (Id. 60).  Indeed, his only specific
recollection was "that the word 'malpractice' was used."  (Id.
59).

-6-

## 4.   The Insurance Policy

On November 11, 2004, after the contract had been cancelled and the Supreme Court had ruled against Degree but before the Second Department had decided the appeal, GWF applied to renew a UNIC Lawyers Professional Liability insurance policy (the "renewal application"). (Kalik Decl. Ex. DD ). Question 30.b of the application asked: "After inquiry, are attorneys in your firm aware: . . . of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them?" (Id. at 7). GWF checked "No". (Id.). By letter to UNIC dated December 8, 2004, GWF reaffirmed that "after inquiry, [it was] not aware of any claims and/or circumstances, acts, errors or omissions that could result in a professional liability claim since completion of [the] application." (Id. Ex. EE).

UNIC issued GWF a Lawyers Professional Liability Insurance policy (the "Policy") for the period from December 11, 2004 to December 11, 2005. (Id. Ex. FF). The Policy contained a list of exclusions, including an exclusion of

> II.   any CLAIM arising out of any WRONGFUL
> ACT occurring prior to the effective
> date of this policy if:
>
> . . .
>
> B.   if the INSURED at or before the
> effective date knew or could have
> reasonably foreseen that such
> WRONGFUL ACT might be expected to
> be the basis of a CLAIM.  However,
> this paragraph B. does not apply to
> any INSURED who had no knowledge of
> or could not have reasonably
> foreseen that any such WRONGFUL ACT

-7-

might be expected to be the basis
of a CLAIM

(Id. Ex. FF at 5). A "wrongful act" is defined as "any actual or
alleged" act, error, omission, misstatement, misleading
statements, neglect or breach of duty, or personal injury. (Id.
at 4).

## 5. **The Malpractice Action**

Forlenza informed Degree of the Second Department's
decision on April 14, 2005. (Forlenza Decl. ¶ 20). Upon
learning that the Second Department had affirmed the cancellation
of the contract, Lee threatened to sue GWF for malpractice.
(Id.). By letter dated April 14, 2005, GWF reported a potential
claim to UNIC. (Id. Ex. CC; Forlenza Decl. ¶ 21). The letter
stated that it was intended "to fulfill the requirements of
Section IIIA [of the Policy] to provide United National Insurance
Company with written notice upon our first becoming aware of any
such potential claim." (Kalik Decl. Ec. CC). GWF explained that
"[t]he potential injury is our client's inability to purchase the
Premises at the Contract price." (Id.).

On December 1, 2005, Degree sent GWF a draft complaint,
which GWF in turn forwarded to UNIC. (Id. Ex. E; D at 16).
Settlement discussions followed, but they failed. (Id. Ex. H).
Hence, in February 2006, Degree filed its complaint against GWF
in Supreme Court, Kings County, alleging malpractice. (Kalik
Decl. Ex. KK). Degree's complaint asserts:

> Defendants did not advise Degree that it
> needed to obtain a mortgage commitment within

-8-

>30 days of the contract, on or about June 20,
>2003.  GWF also did not advise Degree that
>its failure to obtain the mortgage
>commitment, as required by the contract,
>could result in F.A.B. cancelling the
>contract and Degree forfeiting its down
>payment of $115,000.00.  On the contrary, GWF
>misled plaintiffs and advised them that the
>contract was enforceable against F.A.B. and
>that compliance with the mortgage contingency
>clause was waived by F.A.B. and/or was
>unnecessary.

(Id. at 27.).

### 6.   **UNIC Disclaims Coverage**

By letter dated March 8, 2006, UNIC agreed to defend

GWF "under a full and complete reservation of rights."  (Lopez

Decl. Ex. 10).  By letter dated March 23, 2006, UNIC stated that

it was continuing its coverage investigation and reserved "any

and all of its rights."  (Kalik Supp. Decl. Ex. I).

On March 24, 2006, UNIC received GWF's files on the

Degree matters.  (Id. Ex. J).  By letter dated May 23, 2006, UNIC

notified GWF that it was disclaiming coverage under the Policy

and that it would immediately commence a declaratory judgment

action seeking a judicial determination that there was no

coverage.  (Lopez Decl. Ex. 11).  UNIC asserted that GWF made a

material misrepresentation when it submitted the renewal

application by failing to report that FAB's cancellation of the

contract on June 23, 2003, as an incident that "might be expected

to be the basis of a claim."  Hence, UNIC asserted, it was

entitled to rescission of the Policy or, alternatively, to deny

coverage based on Exclusion II B of the Policy.

## B.    Procedural History

On May 25, 2006, UNIC commenced this declaratory
judgment action.  (Kalik Decl. Ex. NN).  On October 6, 2006, GWF
filed an answer and counterclaim seeking defense and indemnity
under the UNIC policy as well as its costs to defend the
declaratory judgment action.  (Id. Ex. PP).  On June 23, 2008
UNIC, GWF, and Degree moved for summary judgment.  UNIC seeks an
order that it does not owe any duty to defend or indemnify GWF in
the underlying malpractice action.  GWF and Degree, filing
separate motions, seek an order requiring UNIC to indemnify GWF
under the policy.  For the following reasons, GWF's and Degree's
motions are granted and UNIC's motion is denied.

### DISCUSSION

## A.    Applicable Law

### 1.    Summary Judgment Standard

The standards governing motions for summary judgment
are well-settled.  A court may grant summary judgment only where
there is no genuine issue of material fact and the moving party
is therefore entitled to judgment as a matter of law.  See Fed R.
Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 585-87 (1986).  Accordingly, the court's task is
not to "weigh the evidence and determine the truth of the matter
but to determine whether there is a genuine issue for trial."
Anderson v. Liberty Lobby, Inc., 477 U.S. 251 (1986).  Summary
judgment is inappropriate if the Court, resolving all ambiguities

and drawing all reasonable inferences against the moving party, finds that the dispute about a material fact is "such that a reasonable jury could return a verdict for the nonmoving party." See id. at 248.

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. Nat'l Union Fire Ins. Co. v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

A court faced with cross-motions for summary judgment need not "grant judgment as a matter of law for one side or the other," but "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Heublein, Inc. v. United States, 996 F.2d 1455,

1461 (2d Cir.1993) (quoting Schwabenbauer v. Bd. of Ed. of Olean, 667 F.2d 305, 313-14 (2d Cir. 1981)).

## 2. Prior Knowledge Exclusion

Insurance policies are read "in light of 'common speech' and the reasonable expectations of a businessperson." Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383 (2003) (quoting Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co., 60 N.Y.2d 390, 398 (1983)). An insurer faces a "heavy burden" when negating coverage based on an exclusion. Belt Painting Corp., 100 N.Y.2d at 384 (citing Westview Assoc. v. Guaranty Nat'l Ins. Co., 95 N.Y.2d 334, 340 (2000)). If an insurer "negate[s] coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Id. at 383 (quoting Continental Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 652 (1993)). Insurance policy exclusions are given a "strict and narrow construction," and if the exclusion provision is found to be ambiguous, any ambiguity will be resolved against the insurer. Id.; see also Westport Ins. Corp. Goldberger & Dubin, P.C., No. 04 Civ. 4384 (BSJ) 2006 U.S. Dist. LEXIS 31329, *8 (S.D.N.Y. March 3, 2006).

## 3. Rescission

An insurer may void an insurance contract if the contract was induced by a material misrepresentation. N.Y. Ins. L. § 3105(a) (McKinney 2000); Chicago Ins. Co. v. Halcond, 49 F. Supp. 2d 312, 315 (S.D.N.Y. 1999). An insurance contract may be

voided on innocently made factual misrepresentations provided knowledge of the facts misrepresented would have stopped the insurer from entering into the insurance contract. N.Y. Ins. L. § 3105(b) (McKinney 2000); Tennenbaum v. Ins. Co., 579 N.Y.S.2d 351 (1st Dep't 1992). When the insurer's questions calls for the applicant's opinion, the applicant's response is a misrepresentation only if "the applicant has not truthfully portrayed his or her mental state." Chicago Ins. Co., 45 F. Supp. at 315; see also Berkshire Life Ins. Co. v. Owens, 910 F. Supp. 132, 134 (S.D.N.Y. 1996); Bronx Sav. Bank v. Weingandt, 1 N.Y.2d 545, 549 (1956) ("A representation as to good health in an application for insurance . . . is not an affirmation of fact and does not provide a basis for rescission in the absence of proof of actual fraud.").

    "In determining the question of materiality, evidence of the practice of the insurer which made such contract with respect to the acceptance or rejection of similar risks shall be admissible." N.Y. Ins. L. § 3105(c) (McKinney 2000).

**B.    Application**

    UNIC argues that it was entitled to disclaim coverage because GWF failed to report the aborted FAB transaction as a basis for a potential claim when it submitted the renewal application in December 2004. GWF represented that its attorneys were not "aware . . . of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them." The Policy also excluded any claim based on any wrongful act "if

-13-

[GWF] at or the effective date [of the Policy, December 11, 2004]
knew or could have reasonably foreseen that such WRONGFUL ACT
might be expected to be the basis of a CLAIM."

          The question thus presented is whether, in December
2004, GWF knew or a reasonable attorney in GWF's shoes could have
reasonably foreseen that its representation of Degree in its
failed attempt to purchase the Property might lead to a
malpractice claim.  See Citak & Citak v. St. Paul Travelers Cos.,
No. 07 Civ. 5459 (WHP), 2008 WL 1882660, *3 (S.D.N.Y. April 28,
2008) ("Courts determine whether an insured is on notice of a
potential claim using an objective reasonableness standard.").

          On the record before the Court, I conclude that a
reasonable jury could not find that in December 2004 GWF knew or
a reasonable attorney in GWF's shoes could have reasonably
foreseen that Degree would assert a malpractice claim against
GWF.  Hence, defendants are entitled to judgment as a matter of
law, and their motions for summary judgment are granted.

          First, a reasonable jury could only conclude, on the
evidence before the Court, that GWF discussed the mortgage
contingency clause with Lee.  In his detailed declaration,
Forlenza recounts his discussions with Lee about the contract,
including the mortgage contingency clause.  For example, Forlenza
recalls discussing with Lee the decrease in the period of time
Degree had to obtain a mortgage, from forty to thirty days.  In
addition, when Lee told Forlenza a week or two before the
scheduled closing that he was going "all cash" and that he had

-14-

negotiated this change directly with FAB's principals, Forlenza reminded him of the mortgage contingency clause. Lee told Forlenza that "it was not a problem" and that Lee had "already worked it out" with FAB's principals. (Id. ¶¶ 12-13). Hence, it is clear that GWF discussed the mortgage contingency clause with Lee on more than one occasion.

Second, Lee was an experienced real estate developer who often handled negotiations and arranged for financing on his own, and here he did so as well, bypassing his lawyers at GWF to negotiate directly with FAB. When he finally did tell Forlenza of the change to an all cash deal with only a week or two left before the closing, there was little Forlenza could do. Forlenza immediately called FAB's attorney to advise that the parties had agreed between themselves to go all cash. FAB's attorney did not dispute Forlenza's statement or insist that the deal proceed on the existing terms, but stated that he would get back to Forlenza. He did not do so, however, and instead, on June 23, 2003, FAB sent a letter directly to Degree cancelling the contract. A reasonable jury could only find, however, that the contract was cancelled because of Lee's actions and the timing of his actions, and not because of anything that Forlenza did or failed to do.

Third, it is clear that even if FAB had waived the mortgage contingency clause and agreed to proceed on an all cash basis, Degree did not have the necessary cash to close on an all cash basis. After Forlenza protested the cancellation of the deal and asked for the mortgage contingency clause to be waived,

-15-

FAB's lawyer asked for evidence that Degree had the cash to purchase the Property on an all cash basis.  Degree could not produce the evidence, for Lee had failed to raise the necessary cash by refinancing another property as he had planned.  Again, Lee's own actions and failings created his predicament.

Fourth, after it became clear that FAB would not close, Lee asked GWF to represent Degree in suing FAB for specific performance.  Evidently, Lee was not so unhappy with GWF that he turned to new attorneys.  And even after the trial court ruled against Degree in December 2003, Lee asked GWF to handle the appeal.  In view of Lee's continued desire to have GWF represent him and the fact Lee was a long-time client of the firm, GWF surely had no reason to expect that Lee would later sue the firm. It was not until April 14, 2005, months after GWF submitted the renewal application, when the Appellate Division also ruled against Degree, that Lee first threatened to sue for malpractice.

On these indisputable facts, a reasonable jury could only find that in December 2004, months before the Appellate Division's ruling, GWF did not know and a reasonable attorney in its shoes could not have reasonably foreseen that Lee and Degree would assert a malpractice claim based on an occurrence in June 2003, some eighteen months earlier.

UNIC points to three matters to support its motion for summary judgment.  These matters do not, however, raise a genuine issue of fact, much less show that UNIC is entitled to judgment in its favor.

-16-

First, UNIC argues that Forlenza did not discuss the
mortgage contingency clause with Lee, relying on an answer that
Forlenza gave in his deposition.  When asked if he spoke to Lee
about the meaning and effect of the mortgage contingency clause,
Forlenza responded: "There was no need to."  (Kalik Decl. Ex. J
at 546).  This testimony does not raise a genuine issue of fact.
The answer is equivocal and is not inconsistent with the more
detailed statements in Forlenza's declaration.  Even if there had
been "no need to" discuss the mortgage contingency clause -- and
there probably was no need to, given Lee's extensive experience
as a real estate developer and the clarity of the provision --
Forlenza could have discussed the clause with Lee anyway, and
apparently he did so.  UNIC's counsel should have pressed
Forlenza for a more definitive answer at his deposition, but he
did not.

Second, UNIC relies on an internal GWF email
referencing a draft affirmation that Chernis -- an outside
attorney -- had prepared for Forlenza to sign.  The draft
apparently stated that GWF "inadvertently overlooked the mortgage
contingency clause."  This email also fails to raise a genuine
issue of fact for trial.  As a preliminary matter, the purported
statement in the draft affirmation is hearsay (if not double
hearsay).  The draft affirmation itself is not in the record, and
thus the record contains only the email's description of the
affirmation.  More importantly, the statement is not Forlenza's
statement, as the draft was prepared by Chernis.  The affirmation

-17-

had not been signed by Forlenza and was undergoing an internal review and drafting process.  Moreover, even if the email's description of the affirmation were admissible, it would not be sufficient to support a jury's verdict in UNIC's favor.

Finally, UNIC argues that a potential malpractice claim was discussed by GWF and Chernis after the trial court ruled in December 2003 that FAB properly cancelled the contract.  Chernis testified that he and GWF discussed "the potential of a malpractice action."  (Kalik Decl. Ex. T at 56-57).  Chernis answered "Yes" to the question:  "Did you have any communication in or about December of 2003 when Justice Clemente rendered his decision regarding -- with any of the attorneys at Granoff Walker regarding a potential future malpractice claim by Mike Lee or Degree?"  Chernis then stated:  "The only specific statement that I now recall is that the word 'malpractice' was used."  (Id. 59:3-4).  Even accepting Chernis's testimony as true, it hardly provides proof that a malpractice claim was foreseeable in December 2003.  Chernis does not recall the specifics, and the discussion could have been that the potential of a malpractice claim was low or high.  At most, Chernis's testimony suggests that GWF might expect a claim if Degree did not win on appeal, but the appeal was still pending in December 2004 when GWF submitted the renewal application.

As an insurance carrier seeking to disclaim coverage based on a prior knowledge exception, UNIC bears a heavy burden. When an attorney is asked by a carrier whether he is aware of any

-18-

legal work that might reasonably be expected to lead to a claim, he is expected to answer "yes" only as to matters that involve a clear breach of duty, such as the failure to comply with the statute of limitations, attorney neglect, criticism by the court or disciplinary proceeding, or explicit threats of litigation. See, e.g., Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co., 199 Fed. Appx. 29 (2d Cir. 2006) (notice of potential claim established by lawsuit and liability found on the issue); Ingalsbe v. Chicago Ins. Co., 270 A.D.2d 684, 685 (3d Dep't 2000) (statute of limitations); Fogelson v. Home Ins. Co., 129 A.D.2d 508, 509 (1st Dep't 1987) (failure to timely file an answer).

Here, there was no such clear breach of duty. Rather, the evidence makes clear that Lee put his attorneys in a difficult position by negotiating a significant change in the contract directly with the principals of FAB rather than through the lawyers, by not telling Forlenza that he had done so until just a week or two before the scheduled closing, and by not having the cash to follow through on an all cash purchase. Moreover, instead of expressing dissatisfaction with GWF when the contract was cancelled, Lee continued to ask the firm -- with which he had had a sixteen-year relationship at that point -- to represent him. Hence, GWF did not know and could not have reasonably foreseen, when it submitted its renewal application in December 2004, that Lee would sue it for malpractice based on the cancellation of the contract some eighteen months earlier.

-19-

Accordingly, GWF and Degree are entitled to judgment as a matter of law.

### CONCLUSION

For the foregoing reasons, GWF's and Degree's motions for summary judgment are granted.  UNIC's motion for summary judgment is denied.  Judgment will be entered dismissing the complaint and declaring that GWF is entitled to coverage under the policy.  The Clerk of the Court shall enter judgment accordingly, with costs in favor of GWF.

SO ORDERED.

Dated:     New York, New York
           February 23, 2009

                                    DENNY CHIN
                                    United States District Judge